UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL NO. 13-10952-RWZ


DENNIS R. DeVONA

v.

STEVEN M. ZEITELS, M.D.


MEMORANDUM OF DECISION

March 12, 2014


ZOBEL, D.J.

Plaintiff Dennis R. DeVona has sued defendant Steven M. Zeitels, M.D., for

correction of inventorship of U.S. Patent No. 6,955,645 ("the '645 Patent").  See 35

U.S.C. § 256.  He also brings four claims under Rhode Island law regarding the

wrongful dissolution of his alleged partnership with defendant.  Defendant has filed

seven counterclaims.[1]  Plaintiff now moves to dismiss those counterclaims on multiple

grounds (Docket # 20).  Defendant moves for summary judgment on plaintiff's

correction of inventorship claim, alleging it is barred by the equitable doctrine of laches

(Docket # 28).

## I.    Background

Plaintiff is an experienced mechanical designer who also ran an antiques

---

[1]The counterclaims are brought in the name of Zeitels and Endocraft L.L.C., a company Zeitels
started.  Endocraft, however, is not yet a proper party in this case.  At the court's direction, Endocraft has
filed a motion to intervene pursuant to Federal Rule of Civil Procedure 24.  Docket # 57.  The motion is
ALLOWED.

business in Rhode Island.  Compl. ¶ 11.  Defendant is an innovative laryngeal surgeon and developer of surgical instruments.  Id. ¶ 10.  Plaintiff and defendant collaborated to design a glottiscope, an instrument used to examine the larynx and vocal folds.  The parties dispute how their collaboration began.  Plaintiff states defendant approached him about partnering to design and sell the glottiscope.  Id. ¶¶ 17-20.  Defendant claims plaintiff asked for permission to market two products defendant had previously invented.  Def.'s Mem. in Opp. to Pl.'s Mot. to Dismiss Counterclaims, Docket # 22, at 3.  What is undisputed, however, is that the two became good friends, so much so that in 2003, plaintiff served as marriage officiant at defendant's wedding.  Compl. ¶ 12.

Plaintiff claims that in Fall 1997, he and defendant launched their business, which they agreed to operate as co-owners and split all profits on a 60%-40% basis, with 60% going to defendant.  Id. ¶ 21.  Plaintiff also claims he created several design features that made the glottiscope innovative.  Id. ¶¶ 28-37.

On April 21, 1999, defendant filed a Certificate of Organization with the Rhode Island Secretary of State forming Endocraft, L.L.C., whose stated purpose was to sell surgical instruments.  Id. ¶ 43.  Defendant listed himself as Endocraft's sole member.  Id.  That same year, defendant prepared, and plaintiff signed, an "Independent Sales Representative Agreement" ("the Agreement") with Endocraft.  Docket # 17-3.  The Agreement provided plaintiff with forty percent of the "net sales" he made, "after appropriate and reasonable deductions for research and development costs have been made by [Endocraft]."  Id. § 6(a).  Defendant presented the Agreement to plaintiff as a means to provide him an income until their partnership, as governed by the 60%-40%

split, became profitable.  Compl. ¶ 48.

On February 4, 2002, defendant filed U.S. patent application No. 10/061,256 ("the '256 application").  Id. ¶ 52.  He listed himself as the sole inventor  Id.  Plaintiff claims he conceived of one or more of the inventions claimed in the application, including a "detachable baseplate design incorporating channels for removable light and suction cannulae."  Id. ¶ 55.  The '645 Patent issued on October 18, 2005.  Id. Ex. 1.

Meanwhile, Endocraft's sales began to increase, and in 2006, the company became "cash flow positive."  Id. ¶ 62.  On December 11, 2007, Endocraft amended its Articles of Organization to name plaintiff its manager.  Id. ¶ 67.  Plaintiff states that during this time, defendant distributed to himself large amounts of Endocraft's revenue in order to recover the capital contributions he had made to the business.  Id. ¶ 61.  Defendant claims plaintiff never contributed his share of the start-up costs.  Def.'s Mem. in Opp. at 4.

The parties' personal and professional relationships deteriorated in 2010.  According to defendant, in July 2010, he learned plaintiff was not keeping proper records and maintaining appropriate storage spaces for Endocraft products, potentially in violation of Food and Drug Administration ("FDA") regulations.  Id.  He also claims plaintiff began demanding more money, and doing so frequently, to cover the cost of an over-budget home renovation project in Florida.  Id.  Finally, he accuses plaintiff of using Endocraft's FedEx shipping account for personal purposes and stealing Endocraft's products.  Id.  On October 22, 2011, defendant terminated plaintiff as

Endocraft's manager.  Compl. ¶ 72.  Defendant alleges that following the termination, plaintiff began to act erratically.  He refused to relinquish control of Endocraft's email address and phone number and has not returned defendant's property, including a prized laryngoscope holder defendant received as a gift from a friend and mentor. Def.'s Mem. in Opp. at 5.

Plaintiff's suit contains five claims: (1) addition as a co-inventor of the '645 patent, see 35 U.S.C. § 256; (2) declaratory, equitable, and monetary relief for wrongful ouster from the alleged partnership and wrongful dominion over partnership property and business, see Rhode Island Uniform Partnership Act, R.I. Gen. L. § 7-12-1 et seq.[2]; (3) breach of fiduciary duty; (4) breach of the parties' partnership agreement; and (5) unjust enrichment.

Defendant, on behalf of himself and Endocraft, filed seven counterclaims along with his answer: (1) declaratory relief that plaintiff is not a co-inventor of the '645 Patent; (2) intentional interference with business and/or contractual relations; (3) breach of the Agreement; (4) breach of the covenant of good faith and fair dealing in the Agreement; (5) unjust enrichment; (6) conversion; and (7) unfair business practices in violation of Mass. G. L. ch. 93A, §§ 2 and 11.

Plaintiff claims defendant's counterclaims violate three procedural pleading rules.  See Fed. R. Civ. P. 8(a); 10(b); 12(f).  Alternatively, he moves to dismiss Counterclaims III-VII against defendant for lack of standing and failure to state a claim.

---

[2]The Agreement contains a choice of law clause specifying that the Agreement "shall be construed and enforced in accordance with the laws of the State of Rhode Island."  Docket # 17-3 at ¶ 14.

He further moves to dismiss Counterclaim VII against defendant and Endocraft on choice of law grounds, as well as the ground that defendant's 93A claim fails as it pertains to an "intra-enterprise dispute" that involves no trade or commerce.  Defendant asserts he is entitled to summary judgment on Count I of the complaint because plaintiff's inventorship claim is barred by laches.

## II.     Analysis

### A.     Plaintiff's Motion to Dismiss All Counterclaims

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement . . . showing that the pleader is entitled to relief."  Rule 10(b) requires a pleading to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Finally, Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Plaintiff contends defendants' counterclaims are verbose, meandering, and contain superfluous and prejudicial information, in violation of these three rules.

This contention is without merit.  First, as a general matter, the "federal rules promote the disposition of claims on the merits rather than on the basis of technicalities."  Kuehl v. F.D.I.C., 8 F.3d 905, 908 (1st Cir. 1993) (citing Foman v. Davis, 371 U.S. 178, 181-82 (1962)).  Second, and more specifically, defendants' counterclaim pleading is simply nowhere near egregious enough to warrant the extraordinary remedy plaintiff seeks.  See Bose Corp. v. Lightspeed Aviation, Inc., 691 F. Supp. 2d 275, 278 (D. Mass. 2010) (noting 12(f) motions are disfavored); Dennison

v. LaPointe, No. 06-40100-FDS, 2006 WL 3827516, at *2 (D. Mass. Dec. 21, 2006)

(denying as an "extraordinary remedy" a motion to strike a complaint on Rule 8

grounds); 5A Charles Alan Wright et al., Federal Practice and Procedure § 1322 (3d

ed. West 2013) (stating Rule 10(b) motions often "employed only as a dilatory tactic").

Plaintiff is not entitled to dismissal on these grounds.

### B.   Plaintiff's Motion to Dismiss Counterclaims III-VII against Defendant

Plaintiff moves to dismiss Counterclaims III-VII on two grounds.  He alleges, first,

that defendant lacks standing to bring these counterclaims, and second, that the

counterclaims do not state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).

### 1.   Standing

### a.   Independent Sales Representative Agreement

The Agreement was executed between plaintiff and Endocraft.  Defendant was

not a party to the Agreement, and he concedes as much.  Instead, he argues that he is

an intended beneficiary of the Agreement and therefore has standing to bring suit to

enforce it.  See Restatement (Second) of Contracts §§ 304, 315 (1981) (intended

beneficiary of promise has standing to enforce a duty of performance, but incidental

beneficiary does not).  Rhode Island law applies Restatement § 302 to determine

whether a beneficiary is intended or incidental.  See Cathay Cathay, Inc. v. Vindalu,

L.L.C., 962 A.2d 740, 745 (R.I. 2009).  A beneficiary is intended

> if recognition of a right to performance in the beneficiary is appropriate to
> effectuate the intention of the parties and either

6

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement § 302(1).  Accordingly, as the Restatement directs, I must examine the Agreement to determine whether recognizing defendant as an intended beneficiary effectuates the parties' intentions.

I conclude it does not.  Rhode Island law looks to the words of the contract to determine intent.  Cathay Cathay, 962 A.2d at 746.  Where the words are unambiguous, the parties are bound by their ordinary meaning.  Id. (quoting Singer v. Singer, 692 A.2d 691, 692 (R.I. 1997) (mem.)).  "[T]he parties [must] directly and unequivocally intend to benefit a third party in order for that third party to be considered an intended beneficiary."  Forcier v. Cardello, 173 B.R. 973, 985 (D.R.I. 1994).  No unequivocal intention is present here.  There is nothing ambiguous about the Agreement, and nothing therein even hints at defendant being an intended beneficiary.  Rhode Island law requires me to conclude he is not an intended beneficiary and thus lacks standing to enforce the counterclaims that derive from the Agreement.  Plaintiff's motion to dismiss Counterclaims III and IV is allowed.[3, 4]

In seeking to dismiss Counterclaims V and VI, however, plaintiff casts too wide a net.  Counterclaim V is for unjust enrichment, which, as an equitable doctrine, is

---

[3]Because plaintiff has only moved to dismiss these counterclaims against defendant, they are still alive as to Endocraft.

[4]I address Counterclaim VII infra in plaintiff's motion to dismiss against defendant and Endocraft and do not analyze it separately here.

available only where the parties have no contractual relationship.  See Metro. Life Ins.

Co. v. Cotter, 984 N.E.2d 835, 849 (Mass. 2013) (quotation and citation omitted); R & B

Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1355 (R.I. 1984).  Here, by prevailing on

his argument that defendant is not a party to the contract, plaintiff necessarily defeats

his own standing argument with respect to defendant's unjust enrichment counterclaim.

Nor is plaintiff entitled to dismissal of Counterclaim VI for conversion.  Rhode Island

and Massachusetts law recognize that conversion is a tort.  See Montecalvo v.

Mandarelli, 682 A.2d 918, 928 (R.I. 1996) (citing Restatement (Second) of Torts §

222(A)(1)); Woodcock v. Am. Inv. Co., 380 N.E.2d 624, 627 (Mass. 1978).  A

conversion claim does not construe the Agreement, and thus, the conclusion that

defendant is not a party to the Agreement is, by itself, insufficient to warrant dismissal

of his counterclaim in tort.

**b.    Injury**

Plaintiff presents an alternative standing argument.  He contends that defendant

lacks standing because the injury defendant's counterclaims allege occurred to

Endocraft, not him.  True enough, "when the defendant['s] alleged wrong violates a

right belonging to a corporation, or causes an injury to a corporation, a shareholder

cannot, in his own name, bring an action to enforce those rights or redress those

injuries." Laverty v. Massad, 661 F. Supp. 2d 55, 62 (D. Mass. 2009) (citing Diva's Inc.

v. City of Bangor, 411 F.3d 30, 42 (1st Cir. 2005)).  This is still true where the company

is an L.L.C. and has only one shareholder.  Id.  Looking at the counterclaim pleading in

this case, I cannot parse out to whom the injury occurred.  In fact, it appears to allege

injury to defendant (*i.e.*, the retained laryngoscope holder) and Endocraft (*i.e.*, continued use of Endocraft's phone number and email address).  <u>See</u> Ans. and against d

Countercls., Docket # 17, at 36 (describing plaintiff's refusal to return "certain items belonging to Endocraft *and/or* Dr. Zeitels") (emphasis added).  Absent a clearer understanding of the alleged injury, plaintiff's motion to dismiss is denied.

### 2.   Failure to State a Claim

I must now consider whether Counterclaims V and VI survive plaintiff's second ground for dismissal.[5]  In a motion to dismiss under Rule 12(b)(6), I accept as true all factual allegations contained in the counterclaim.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  If the counterclaim fails to state a plausible claim upon which relief can be granted, it must be dismissed.  <u>Id.</u>

Defendant has plainly stated an unjust enrichment claim and a conversion claim. Under Massachusetts law,[6] "[u]njust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" <u>Santagate v. Tower</u>, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (quoting

---

[5]Plaintiff's memorandum in support of his motion to dismiss seems to treat the standing inquiry as derivative of the failure to state a claim inquiry.  <u>See</u> Mem. in Supp. at 14, 18.  "'Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6).'" <u>Katz v. Pershing, L.L.C.</u>, 806 F. Supp. 2d 452, 456 (D. Mass. 2011) (quoting <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 795 n.2 (5th Cir. 2011)).  It is therefore not altogether clear whether plaintiff intends the 12(b)(6) analysis as an independent—*i.e.*, separate from standing—ground for dismissal.  I nevertheless undertake the analysis.

[6]As established above, Counterclaims V and VI do not construe the Independent Sales Representative Agreement, so the choice-of-law clause specifying Rhode Island law does not apply.  I note, however, that the result would not change if Rhode Island law did apply.

Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F. Supp. 340,

347 (D. Mass. 1982)).  "Conversion consists of a wrongful exercise of dominion or

control over the personal property of another."  Cahaly v. Benistar Prop. Exch. Trust

Co., 864 N.E.2d 548, 559 (Mass. App. Ct. 2007).  Defendant's counterclaims accuse

plaintiff of failing to repay money owed to Endocraft and defendant, misusing Endocraft

property and accounts, and refusing to return Endocraft's and defendant's property

following his termination.  That is all defendant and Endocraft need to survive a Rule

12(b)(6) motion.  Plaintiff's motion to dismiss Counterclaims V and VI is denied.[7]

### C. Plaintiff's Motion to Dismiss Counterclaim VII Against Defendant and Endocraft

Plaintiff moves to dismiss defendant's and Endocraft's chapter 93A claim on two

grounds.  First, he states the 93A claim is barred as a matter of law because it arises

out of an "intra-enterprise dispute" and therefore has no connection to "trade or

commerce."  Second, he argues defendant and Endocraft cannot bring a 93A claim

given the choice of law clause in the Agreement.

### 1. "Intra-Enterprise Dispute"

Chapter 93A § 11 provides

Any person who engages in the conduct of any trade or commerce and
who suffers any loss of money or property . . . as a result of the use . . . by
another person who engages in any trade or commerce of . . . an unfair or
deceptive act or practice declared unlawful by section two . . . may . . .
bring an action in the superior court . . . .

Mass. Gen. L. ch. 93A § 11.  The statute applies to unfair or deceptive acts which arise

[7]Because I cannot conclude that defendant lacks standing to bring Counterclaims V and VI, I do
not consider plaintiff's argument regarding improper joinder.  See Mem. in Supp. at 20 n.4.

in "dealings between discrete, independent business entities." Szalla v. Locke, 657

N.E.2d 1267, 1269 (Mass. 1995).  The "trade or commerce" it describes refers to

services "offered generally by a person for sale to the public in a business transaction."

Manning v. Zuckerman, 444 N.E.2d 1262, 1265 (Mass. 1983).

   "An employee and an employer are not engaged in trade or commerce with

each other." Id.  Defendant and Endocraft, however, contend that plaintiff was an

independent contractor, and "[d]isputes with independent contractors may be

sufficiently commercial in nature to bring them within the realm of c. 93A."  Mem. in

Opp. at 19 (citing Linkage Corp. v. Trustees of Bos. Univ., 679 N.E. 2d 191, 207 (Mass.

1997)); see Docket # 17-3 at § 12 ("Sales Representative shall be an independent

contractor at will . . . .").  Massachusetts law on this issue is unsettled.  See McAdams

v. Mass. Mut. Life Ins. Co., 391 F.3d 287, 303-04 (1st Cir. 2004); Speakman v.

Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 139-40 (D. Mass. 2005).  But despite this

general uncertainty, the outcome here is clear because there was no commercial

transaction between plaintiff and defendant and Endocraft in the sense 93A requires.

Defendant and Endocraft do not allege plaintiff offered services to the public before,

during, or after he was terminated.  See Manning, 444 N.E.2d at 1265.  Nor were any

services, if offered, done "'in the ordinary course of a trade or business.'" Linkage

Corp., 679 N.E.2d at 207 n.33 (quoting Lantner v. Carson, 373 N.E.2d 973, 975 (Mass.

1978)).  In short, their transaction is strictly private, and for that reason, defendant and

Endocraft may not turn to 93A for relief.  Id.  The motion to dismiss Counterclaim VII is

allowed.[8]

### D.   Defendant's Motion for Summary Judgment

Defendant argues plaintiff's correction of inventorship claim is barred by laches because plaintiff did not bring the claim until seven-and-one-half years after the '645 Patent issued.  Because more than six years have passed since issuance, he contends a presumption of laches applies and plaintiff cannot overcome that presumption.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  I view the facts in the light most favorable to the non-moving party and draw all justifiable inferences in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied.  Id. at 248.

The equitable doctrine of laches bars a correction of inventorship claim if "(1) plaintiff's delay in filing a suit was 'unreasonable and inexcusable,' and (2) the defendant suffered 'material prejudice attributable to the delay.'" Hor v. Chu, 699 F.3d 1331, 1334 (Fed. Cir. 2012) (quoting A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc)).  "[A] delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches."  Advanced Cardiovascular Sys., Inc. v.

---

[8]Because I dismiss Counterclaim VII on "intra-enterprise dispute" grounds, I do not consider plaintiff's choice of law argument.

Scimed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir. 1993).  Inquiry notice applies; in

other words, "'the plaintiff is chargeable with such knowledge as he might have

obtained upon inquiry, provided the facts already known by him were such as to put

upon a man of ordinary intelligence the duty of inquiry.'"  Id. at 1162 (quoting Johnston

v. Standard Mining Co., 148 U.S. 360, 370 (1893)).  The duty to inquire is subject to a

standard of reasonableness.  Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1338 (Fed.

Cir. 1998).  "The application of the defense of laches is committed to the sound

discretion of the district court."  A.C. Aukerman Co., 960 F.2d at 1032.

### 1.    Presumption of Laches

Defendant contends that plaintiff knew in March 2002 that defendant had filed a

patent application on the subject matter plaintiff now claims he invented.  Def.'s Mem.

in Supp. of Summ. J., Docket # 29, at 12.  A plaintiff who is aware of such a patent

application is on inquiry notice, and "once an allegedly omitted inventor is on inquiry

notice, he is on constructive notice when the patent issues."  Id. at 11 (citing Frugoli v.

Fougnies, 74 U.S.P.Q. 2d 1716, 1721 (D. Ariz. 2004)).  According to defendant,

DeVona was thus on constructive notice when the '645 Patent issued, and because he

waited more than six years after that time to file, the presumption of laches applies.

The facts and law suggest otherwise.  The complaint states that plaintiff learned

"in or around March 2002" that defendant had filed the '256 application (from which the

'645 Patent issued), but did not learn of the '645 Patent's issuance until 2012.  Compl.

¶¶ 53, 58.  Accordingly, because he did not actually know of the '645 Patent until 2012,

I must determine at what time plaintiff should have known of the '645 Patent's issuance.

The Federal Circuit has not adopted the proposition that defendant urges me to adopt here: a correction of inventorship plaintiff who is aware of a patent application is automatically on constructive notice of that patent's issuance.  And here, plaintiff pleads facts suggesting it may not be reasonable to presume he should have known of the '645 Patent when it issued.  For one thing, he alleges defendant acknowledged that plaintiff should be a co-inventor and agreed to correct the "error," making it plausible that plaintiff would not punctiliously track the '256 application's progress.  See Compl. ¶ 59.  For another, he claims defendant concealed the issuance of the '645 Patent by, among other things, declining to update Endocraft's marketing materials to reflect its issuance.  Pl.'s Mem. in Opp. to Summ. J., Docket # 41, at 4.  Given these disputed facts, the presumption of laches does not apply.

The absence of the presumption, however, does not end the inquiry on the laches defense.  A.C. Aukerman Co., 960 F.2d at 1038.  I must evaluate the two laches factors—prejudice and unreasonable delay–-based on the totality of the evidence presented.  Id.

### 2.    Laches Factors

#### a.    Prejudice

To succeed on his laches defense, defendant must have suffered either evidentiary prejudice or economic prejudice from plaintiff's delay.  Evidentiary prejudice refers to "a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts."  Id. at 1033.

Economic prejudice "may arise where a defendant . . . will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." Id.

Defendant does not allege economic prejudice, but he advances two claims of evidentiary prejudice: (1) he lost evidence when computer-aided design ("CAD") drawings of the glottiscope prepared by engineer and collaborator David Beaudet burned in a house fire in 2007; and (2) "fading memories and the passage of time." Def.'s Mem. in Supp. at 15-16.  Plaintiff, however, raises a genuine fact issue regarding each of these claims.  The house fire occurred in February 2007, only fifteen months after the '645 Patent issued.  Pl.'s Mem. in Opp. at 18.  Given that it occurred well before the six-year laches period elapsed, I do not understand how the destruction "result[ed] from the plaintiff's delay." A.C. Aukerman Co., 960 F.2d at 1033.  Nor does defendant explain how CAD drawings prepared by a non-party relate to proof of inventorship, such that they are necessary to "present a full and fair defense on the merits." Id.  And finally, plaintiff claims—albeit somewhat speculatively—that defendant may still possess a copy of similar or identical CAD drawings.  Pl.'s Mem. in Opp. at 17-18.  As for fading memories, Beaudet and other witnesses apparently remain able to recall material facts and testify if needed. See Mahmood v. Research in Motion Ltd., No. 11 Civ. 5345(KBF), 2012 WL 242836, at *8 (S.D.N.Y. Jan. 24, 2012) (no evidentiary prejudice where defendant could not identify any witnesses unable to testify).  Defendant does not state otherwise.

In short, a genuine issue of material fact exists as to whether plaintiff's delay, if unreasonable, prejudiced defendant.  I therefore need not consider the second laches factor—whether plaintiff's delay was, in fact, unreasonable.  Because the facts

concerning plaintiff's claim are seriously in dispute, I conclude that defendant is not entitled to summary judgment on his laches defense.

## III.    Conclusion

Defendant's motion to impound documents (Docket # 56) is ALLOWED. Endocraft's motion to intervene (Docket # 57) is ALLOWED.  Plaintiff's motion to dismiss (Docket # 20) is ALLOWED as to defendant on Counterclaims III and IV, ALLOWED as to defendant and Endocraft on Counterclaim VII, and DENIED in all other respects.  Defendant's motion for summary judgment on plaintiff's correction of inventorship claim (Docket # 28) is DENIED.

     March 12, 2014                      /s/Rya W. Zobel

             DATE                           RYA W. ZOBEL
                                    UNITED STATES DISTRICT JUDGE