UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DENNIS R. DEVONA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-10952-IT |
| | * | |
| STEVEN M. ZEITELS | * | |
| | * | |
| Defendant. | * | |
| | * | |
| ************************************* | | |
| | * | |
| STEVEN M. ZEITELS, M.D. and | * | |
| ENDOCRAFT LLC, | * | |
| | * | |
| Counterclaim Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| DENNIS R. DEVONA | * | |
| | * | |
| Counterclaim Defendant. | * | |
| | * | |

MEMORANDUM & ORDER

September 14, 2016

TALWANI, D.J.

I.   Introduction

Before the court is Dennis R. DeVona's motion seeking summary judgment of Endocraft, LLC's ("Endocraft") Counterclaim for intentional interference with business and/or contractual relations (Counterclaim II), partial summary judgment of Endocraft's claims for breach of contract (Counterclaim III) and breach of the implied covenant of good faith and fair dealing (Counterclaim IV), and partial summary judgment of Endocraft and Steven M. Zeitels' claims for unjust enrichment (Counterclaim V) and conversion (Counterclaim VI). See Answer &

1

Countercls. [#17]; Pl.'s Mot. Partial Summ. J. [#155]. Summary judgment as to the claims for intentional interference with business and/or contractual relations is ALLOWED; partial summary judgment as to the other counts is ALLOWED IN PART and DENIED IN PART.

II.     Factual Background

In 1997, DeVona and Zeitels began discussing seriously a project involving a new laryngoscope. Pl.'s Statement Undisputed Material Facts ¶ 1 [#156] ("Pl.'s Stmt."); Defs.' Statement Undisputed Material Facts ¶ 1 [#160] ("Defs.' Stmt."). What happened in this beginning time period—including whether DeVona and Zeitels agreed to form a partnership—is disputed and is not the subject of this motion.

In 1999, Zeitels formed Endocraft. Pl.'s Stmt. ¶ 2; Defs.' Stmt. ¶ 2. In June 1999, Endocraft and DeVona executed an Independent Sales Agreement ("Agreement").[1] Id. ¶ 3. Under the Agreement, Endocraft appointed DeVona "Sales Representative" and "Manufacturing Coordinator" of Endocraft. Gainor Decl. Ex. C ¶¶ 1, 6 [#157-3] ("Agreement"). The Agreement provided that DeVona would be paid forty percent of net profits of the business, minus certain deductions for research and development costs. Agreement ¶ 6(a) & (c). From 1999-2011, DeVona was paid an amount greater than the forty percent of net profits. Defs.' Stmt. ¶¶ 53-55. DeVona concedes that "[f]actual disputes remain concerning payments to DeVona under the Agreement after 2003." Mem. Law Supp. Pl.'s Mot. Partial Summ. J. 8 [#158].

This arrangement appeared to have gone swimmingly until 2010 or 2011, when DeVona and Zeitels' relationship broke down. At that point, Zeitels asserted that:

---

[1] The parties dispute whether the Agreement constituted the extent of their relationship or whether it was just a tool of a previous oral partnership agreement. This dispute also is not the subject of this motion.

2

- DeVona failed to keep Endocraft in compliance with Food and Drug Administration ("FDA") standards. Defs.' Stmt. ¶¶ 61, 64-65.[2]

- DeVona had set up Endocraft's business telephone number and email address within his own family's personal account, and DeVona did not turn over the telephone number and email address to Zeitels or Endocraft after he was terminated from Endocraft. Defs.' Stmt. ¶ 73.

- DeVona sent packages for personal reasons from Endocraft's Federal Express account. Pl.'s Stmt. ¶ 27.

- DeVona stored personal furniture in a space paid for by Endocraft. Pl.'s Stmt. ¶ 33.

- Sometime between 1999 and 2011, Zeitels loaned DeVona a laryngoscope holder that was of sentimental value to Zeitels. Defs.' Stmt. ¶ 58. DeVona had not returned that laryngoscope holder as of the time the instant motion for partial summary judgment was filed.

III. Discussion

    a. *Legal Standard and Choice of Law*

A party may move for summary judgment on a claim or part of a claim, and is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if an issue can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is material if it has the potential to affect the outcome of the case. Id. In reviewing a motion for summary judgment, the court takes all properly supported evidence in the light most favorable to the nonmovant and draws all

---

[2] The parties dispute whether DeVona was required to do so under the Agreement.

reasonable inferences in his favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). If the moving party shows that "there is an absence of evidence to support the nonmoving party's position . . . the burden shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmovant]." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). "It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue." Id. (quoting Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989)).

The parties have stipulated that Rhode Island law governs the counterclaims. Further, the sales agreement is governed by Rhode Island law, and Endocraft is a Rhode Island LLC. For these reasons, the court applies Rhode Island law.

   b.  *Intentional Interference with Business or Contractual Relations*

To prevail on a claim of tortious interference with business relations, a plaintiff must show "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act or interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986). "[T]o prevail on a claim of tortious interference with contractual relations, a plaintiff must demonstrate '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom.'" Ims v. Town of Portsmouth, 32 A.3d 914, 925-26 (R.I. 2011) (quoting Tidewater Realty, LLC v. State, 942 A.2d 986, 993 (R.I. 2008)). The elements for a claim of intentional interference with business relations and a claim of intentional interference with

4

contractual relations are "identical," except that the latter requires the existence of an actual contract. Mesollela, 508 A.2d at 670.

> 1. *Endocraft has offered no proof of specific business or contractual relations.*

For both intentional interference with business relations and intentional interference with contractual relations, a plaintiff must be able to identify a specific relationship with which the defendant has interfered. See Burke v. Gregg, 55 A.3d 212, 222 (R.I. 2012); Ims, 32 A.3d at 926. A claim of tortious interference with business relations that is not supported by any evidence of a specific business relation is "purely speculative" and therefore insufficient. Burke, 55 A.3d at 222 (finding that the trial court properly granted defendants' motion to dismiss where plaintiff merely alleged that defendants interfered with "prospective business clients" and failed to identify "even one, specific, prospective relationship").[3] In a claim of intentional interference with contractual relations, the plaintiff must bring forth evidence of an actual, and not merely implied, contract. Ims, 32 A.3d at 926 (finding that a claim for tortious interference with contractual relations must fail where the plaintiff claimed to have an implicit contract with the defendant but failed to prove existence of an actual contract).

Here, Endocraft has neither named nor provided evidence of any specific contractual or business relation with which DeVona has interfered. Instead, Endocraft focuses on "all the individuals who needed in the future to have" Endocraft's products, including potential customers and physicians. Gainor Decl. Ex. D [#157-4] (Zeitels Deposition 159:23-24). While

---

[3] See also Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 48 (1st Cir. 2002) (applying Massachusetts law and finding that the district court properly granted defendant's motion for summary judgment where plaintiff doctor alleged intentional interference with business relations but failed to "name a single member of the public" and failed to "estimate how many patients actually left or avoided his practice" because of the alleged interference).

one could imagine that Endocraft expected to receive financial benefit from such customers and physicians, Endocraft has not come forward with any evidence of specific contractual relations or business relations with which DeVona interfered, ultimately rendering its claim speculative. Endocraft has not demonstrated a genuine dispute of material fact as to the first element of either a claim for intentional interference with business or contractual relations. Therefore, DeVona is entitled to summary judgment on Endocraft's counterclaim for intentional interference with business or contractual relations.

   2. *Endocraft has offered no proof of actual damages.*

Moreover, DeVona is entitled to summary judgment on this counterclaim because Endocraft has failed to provide evidence of actual damages to its economic interest. Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 721 (R.I. 2003) (affirming summary judgment in an action for interference with contractual relations where plaintiff provided no evidence that she suffered any damages from defendant's interference); Mesollela, 508 A.2d at 670 (finding insufficient plaintiff's allegation of $2 million in prospective damages in a claim for interference with business relations where he provided no evidence supporting that sum).

Endocraft has provided no evidence showing that it suffered any damages, contractual or prospective. It has only speculated as to the business it would have enjoyed had it remained in business. See Defs.' Stmt. ¶ 70 ("Endocraft's sales very likely would have continued . . . ."). Regarding DeVona's alleged withholding of Endocraft's telephone and email accounts, although Endocraft alleges that it caused difficulty in communicating with current customers and that DeVona "filter[ed] the content" of emails from prospective customers," Defs.' Stmt. ¶ 74 (citing McDonough Decl. ¶ 9, Ex. F), it has not provided the court with any evidence as to what current or potential customers it lost because of DeVona's actions. Therefore, DeVona is entitled to

summary judgment on Endocraft's counterclaim for intentional interference with business and/or contractual relations because it failed to come forward with evidence to support this claim.

c. *Breach of contract, implied covenant, unjust enrichment, and conversion*

As to the breach of contract, implied covenant, unjust enrichment, and conversion counterclaims, DeVona moves only for partial summary judgment.

i. *Overpayments to DeVona*

DeVona admits that "[f]actual disputes remain concerning payments to DeVona under the Agreement after 2003" as to the breach of contract and implied covenant claims, Mem. Law Supp. Pl.'s Mot. Partial Summ. J. 8 [#158], but argues that it is undisputed that overpayments made to him prior to 2003 were forgiven loans, and not mere advances. The court finds to the contrary that there is a genuine dispute over the character of these pre-2003 payments.

DeVona brings forth his own deposition testimony where he asserts that the overpayments were forgiven loans, see Pl.'s Stmt. ¶ 11 (citing Dennis DeVona Deposition 318:10-21 [#157-1]), but Zeitels also brings forth his own testimony where he states that he simply "forward[ed]" DeVona the overpayments. McDonough Decl. Ex. H (Zeitels Deposition 101:7-13) [#163-8] (noting that he gave DeVona the money to keep the business stable); see also Aff. Steven M. Zeitels ¶ 6 [#162] ("Endocraft did not forgive the loans or advances made to DeVona."). DeVona also propounds email which he argues show that the parties considered the overpayments as forgiven loans or gifts, but a jury could find that those emails only show that the parties (falsely) labelled the overpayments as loans or gifts to obtain favorable tax treatment. See Gainor Decl. Ex. G [#157-7] (1/28/2002 email from DeVona to Zeitels) ("I never declared any of the 'advances' . . . because they were written as a loan basically . . . [and the accountants] both tell me that the right thing to do is declare the $35,000 'loaned' to me over the last three

years as income in 2001. Evidently that's what accountants do the calendar year in which loans are 'forgiven' but I wanted to run it by you."); Ex. H [#157-8] (6/5/2003 email from DeVona to Zeitels) (noting that DeVona reclassified loan as "forgiven" based on IRS home audit). The emails do not establish for summary judgment purposes that the overpayments made to DeVona before 2003 were forgiven loans or gifts.

      *ii.*   *Compliance with FDA regulations*

   Endocraft's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing are based, in part, on DeVona's failure to maintain Endocraft in compliance with FDA requirements. DeVona does not dispute for summary judgment purposes that he did not keep Endocraft in compliance with FDA requirements, but argues that he was not obligated to do so under the Agreement. Endocraft counters that compliance with FDA requirements was an implied term of the Agreement and/or an implicit obligation that DeVona took on as part of the Agreement when his responsibilities with Endocraft increased.

   "When construing contract terms, the court's main objective is to ascertain the parties' intent." Elena Carcieri Trust-1988 v. Enter. Rent-A-Car Co. of R.I., 871 A.2d 944, 947 (R.I. 2005) (citing D.T.P., Inc. v. Red Bridge Props., Inc., 576 A.2d 1377, 1381 (R.I. 1990)). "If the intention of the parties can be clearly discerned from the language of a written contract, the words of a contract are assigned their plan and ordinary meaning." Id. However, if a contract is ambiguous, then the court "may consider the construction placed upon the contract terms by the parties." Id. (quoting Johnson v. W. Nat'l Life Ins. Co., 641 A.2d 47, 48 (R.I. 1994)). A contract is ambiguous only when it is "clearly susceptible of more than one interpretation." Id. (quoting Samos v. 43 E. Realty Corp., 811 A.2d 642, 643 (R.I. 2002)). "The interpretation of an unambiguous contract is a question of law, but the interpretation of an ambiguous contract is a

question of fact." Id. (citing Clark-Fitzpatrick, Inc./Franki Found. Co. v. Gill, 652 A.2d 440, 443 (R.I. 1994)).

As to the dispute over FDA compliance, it is undisputed that the Agreement contains no provision obligating DeVona to maintain Endocraft in compliance with FDA regulations. The Agreement is unambiguous as to DeVona's FDA compliance obligations; the obligation is simply not present in the Agreement. It is appropriate for the court to interpret the Agreement and rule in DeVona's favor at the summary judgment stage.

Endocraft's argument that DeVona's taking on more responsibility in Endocraft— specifically, accepting the role of "General Manager," which gave DeVona the responsibility to "handle the day-to-day managing of Endocraft," McDonough Decl. Ex. C. [#163-3] (11/06/2006 email from Norman Orodenker—Endocraft's attorney—to DeVona)—added implicitly the obligation of FDA compliance into the contract is unavailing. There is no evidence that the parties intended the change in role to merge into the Agreement and change its terms.

Additionally, to prevail on a breach of contract claim, a plaintiff must prove that "the defendant's breach . . . caused him damages." Petrarca v. Fidelity & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005) (citing Rendine v. Catoia, 158 A. 712, 713 (R.I. 1932)). Endocraft has failed to show that it was damaged by DeVona's conduct. Endocraft claims that DeVona caused lost profit damages as a result of his non-compliance, but the record belies those claims. Endocraft does not even admit that it shut down because of DeVona, only stating that Endocraft was temporarily wound down and that Endocraft's future was "left open and . . . not fixed," Defs.' Stmt. ¶ 15. Further, Endocraft states only that DeVona's non-compliance with FDA standards caused Zeitels to "deactivate Endocraft as a business managed by DeVona" and that DeVona's "deficient work . . . prevented Endocraft from continuing sales of its medical instruments under

9

DeVona's management." Defs.' Stmt. ¶ 69 (emphasis added). Thus, the record only shows that DeVona's non-compliance may have entitled Endocraft to continue without DeVona, not that Endocraft would have to shut down permanently and lose out on future sales.

DeVona is entitled to partial summary judgment of the claims for breach of contract and breach of the implied covenant of good faith and fair dealing to the extent such breach is based on DeVona's failure to keep Endocraft in compliance with FDA requirements.

       iii. *Retention of Endocraft items and/or selling them and keeping profits*

Zeitels and Endocraft's claims are based in part on the allegation that DeVona retained various Endocraft prototypes and other materials, and that DeVona sold some of those items and kept the profits for himself. DeVona admits that a factual dispute remains regarding his withholding of the laryngoscope holder, Mem. Law Supp. Pl.'s Mot. Partial Summ. J. 12 [#158], but argues that Zeitels and Endocraft have brought forth no evidence in support of these allegations as to retaining any other Endocraft materials or selling items and keeping profits for himself. See Pl.'s Stmt. ¶ 26 (noting that Zeitels and Endocraft brought forth no evidence of DeVona selling surgical instruments and keeping the profits); Defs.' Stmt. ¶ 26 (responding with no evidence and merely inferring that DeVona must have sold Endocraft's surgical instruments for profit because he was paid more money than he was entitled to under the Agreement); Pl.'s Stmt. ¶ 28 (noting that Zeitels and Endocraft brought forth no evidence of which items DeVona retained); Defs.' Stmt. ¶ 28 (admitting that they had no evidence and merely noting that DeVona "alone knows those details."). Where Zeitels and Endocraft assert counterclaims based on these allegations (other than as to the laryngoscope holder), DeVona is entitled to partial summary judgment.

      *iv.*  *DeVona's Further Arguments for Partial Summary Judgment*

 DeVona seeks partial summary judgment as to other matters, including DeVona's withholding of an email address and telephone number, use of the Federal Express account, and storage of personal furniture in space rented out by Endocraft, and Endocraft's claims relating to the laryngoscope holder. Although a party may move for summary judgment as to part of a claim, the court is only required to grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact <u>and the movant is entitled to judgment as a matter of law</u>." Fed. R. Civ. P. 56(a) (emphasis added). Where the "part of a claim" that is the subject of the motion for partial summary judgment is too narrowly drawn, even the absence of a disputed material fact may not entitle the movant to entry of judgment as a matter of law. In that event, Rule 56 allows, but does not require, a court to enter an order stating that any material fact is not genuinely in dispute and treating the fact as established in the case. Fed. R. Civ. P. 56(g) ("the court may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."). The court finds the remaining issues to be so narrowly drawn that even if the court were to determine that there is no material fact in dispute, no judgment as a matter of law would be warranted. The court further declines to determine whether these facts are undisputed as to certain claims, as such determination is unlikely to simplify the issues for trial.

 IV. <u>Conclusion</u>

 For the reasons stated above, DeVona's <u>Motion for Partial Summary Judgment</u> [#155] is ALLOWED IN PART and DENIED IN PART. At this stage, DeVona is entitled to judgment on Endocraft's intentional interference counterclaim (Counterclaim II), and partial summary judgment as to the following:

- Breach of contract (Counterclaim III) and breach of the implied covenant of good faith and fair dealing (Counterclaim IV), to the extent such claims are based on DeVona failing to operate Endocraft in accordance with FDA regulations;

- Breach of contract (Counterclaim III), breach of the implied covenant of good faith and fair dealing (Counterclaim IV), unjust enrichment (Counterclaim V), and conversion (Counterclaim VI), to the extent such claims are based on DeVona refusing to return prototypes, instruments, tools, and other physical items (excluding the laryngoscope holder) belonging to Endocraft and/or Zeitels or selling surgical instruments and keeping the profits.

IT IS SO ORDERED.

September 14, 2016                              /s/ Indira Talwani
                                                United States District Judge