UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS R. DEVONA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No. 13-cv-10952-IT |
| | * |
| STEVEN M. ZEITELS, | * |
| | * |
| Defendant. | * |
| | * |
| **************************************** | |
| | * |
| STEVEN M. ZEITELS, M.D., and | * |
| ENDOCRAFT LLC, | * |
| | * |
| Counterclaim Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| DENNIS R. DEVONA, | * |
| | * |
| Counterclaim Defendant. | * |

MEMORANDUM & ORDER

September 6, 2017

TALWANI, D.J.

Before the court is Defendant Steven M. Zeitels' Motion for Judgment as a Matter of Law, or New Trial, to Alter and Amend the Judgment, and Other Relief [#285], seeking judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b), or a new trial, pursuant to Fed. R. Civ. P. 59, and other relief. For the reasons set forth herein, Zeitels' request for judgment as a matter of law is GRANTED.

I. Introduction

This case involved the fallout of two friends—Plaintiff Dennis R. DeVona and Defendant Zeitels. The men worked together for more than a decade but their endeavors eventually ended.

In April 2013, DeVona filed a complaint for, *inter alia*, declaratory relief under the Rhode Island Uniform Partnership Act, breach of fiduciary duty, breach of contract, and unjust enrichment. Compl. [#1].[1]

Following a nine-day trial, the jury returned a verdict, finding as relevant here that:

- DeVona and Zeitels entered into a legal partnership;
- In 2011, Zeitels breached a fiduciary duty arising from that partnership; and
- Zeitels breached the partnership agreement from 1998-2011.

Jury Verdict [#270].[2] The jury awarded DeVona $395,907.00 for the breach of fiduciary duty, and $352,007.00 for the breach of partnership. The court entered judgment consistent with the jury's verdict. J. [#279].

The present motion followed.[3]

---

[1] The complaint also sought a declaration of inventorship of U.S. Patent No. 6,955,645. Zeitels, in turn, sought a declaration of DeVona's non-inventorship of the patent, and brought claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, and violation of Mass. Gen. Laws. ch. 93A, §§ 2, 11. Answer and Counterclaims [#17]. Further, Counterclaim Plaintiff Endocraft LLC brought a claim against DeVona for intentional interference with business and/or contractual relations, and joined Zeitels' actions for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, and violation of Chapter 93A. Id.

In pre-trial orders, the court dismissed Endocraft's action for intentional interference with business and/or contractual relations [#187], and Zeitels' actions for breach of contract and breach of the covenant of good faith and fair dealing. [#58]. The court also dismissed both Zeitels' and Endocraft's Chapter 93A claims. [#58]. At the close of evidence at trial, the court entered judgment for DeVona as a matter of law on Zeitels' conversion claim. [#278].

[2] The jury also found that DeVona did not contribute to the claims of U.S. Patent No. 6,955,645 (and that as a result, DeVona was not a co-inventor and Zeitels was not unjustly enriched); that DeVona did not breach a contract with Endocraft; that DeVona did not breach a covenant of good faith and fair dealing with Endocraft; and that DeVona was not unjustly enriched at Endocraft's expense.

[3] DeVona also filed a Motion to Alter or Amend the Judgment to Include Prejudgment Interest [#281] which the court will address separately.

II. Factual Background

Construed in DeVona's favor, the facts as the jury could find them are as follows.

DeVona is a craftsman with a variety of skill sets in design and manufacture. Zeitels is a surgeon specializing in cancers of the throat. DeVona first met Zeitels in the 1990's when both men attended various auctions. Their friendship grew over time as both shared interests in various arts and crafts, to the point that DeVona served as the officiant of Zeitels' wedding.

In 1994, Zeitels mentioned to DeVona that he (Zeitels) was exploring the possibility of manufacturing a medical instrument. Tr. Day Two [#301] ("Day 2") 24. Zeitels asked DeVona whether DeVona would be interested in "quarterbacking" the project, as Zeitels had neither the time nor experience to involve himself with the actual manufacture or development of a medical instrument. Day 2, pp. 25-26. DeVona resisted the idea at first.

In August 1997, Zeitels called DeVona and asked whether DeVona would be interested in starting a company. DeVona agreed to meet with Zeitels at Zeitels' home, where Zeitels showed DeVona various medical instruments. Day 2, pp. 27-29. Zeitels demonstrated the progress he had made thus far in his design, and DeVona thereafter began to research the feasibility of entering into business with Zeitels. The men had another meeting at Zeitels' house, where they struck a deal whereby Zeitels "would put up the money," DeVona "would put up the energy and work it would take," and the men would "try and knock it out in 12 months"—"it" being somewhat vaguely defined,[4] but including at least (i) "[going] forward with a business"; (ii) quickly selling "whatever [DeVona and Zeitels] developed"; and "develop[ing] a surgical instrument or surgical instruments, that [DeVona and Zeitels] would sell the intellectual property to the highest bidder as soon as [they] could." Day 2, pp. 32-34. They agreed to split the

---

[4] DeVona testified to initially researching the feasibility of getting "involved with a project that would make such an instrument" as that Zeitels envisioned, Day 2, p. 31.

3

endeavor on a 60%-40% basis, with the larger share going to Zeitels. The men opened a bank account to finance the endeavor, and DeVona set to work helping to develop several iterations of a prototype for a laryngoscope.

By early 1999, the men had developed a prototype they thought sufficient to offer to medical device manufacturers. Day 2, p. 118. They met with "ACT Medical" in Boston, where they learned it was financially infeasible to employ a surgical instrument manufacturer as a subcontractor, and decided instead to make the product themselves. Day 2, p. 121.

Shortly thereafter, in April 1999, Zeitels formed Endocraft LLC, and made DeVona the vice president. Day 2, pp. 121-123. According to DeVona, Zeitels explained that he had created the company in order to protect his interests as a physician in case the instrument "went bad" and he needed to shut down the business immediately. Day 2, p. 122. DeVona avers that Zeitels stated that the company did not change the "underlying agreement that [they] were partners": "it doesn't change a single thing. It's a vehicle for our – we're going to need to make these now. You're [DeVona] going to need to spend time making them. We need a vehicle for manufacturing, selling the instruments, instrument or instruments we create." Day 2, p. 122.

In May 1999, Zeitels presented DeVona with a document titled "Independent Sales Representative Agreement." See Ex. 100 ("Agreement"). DeVona expressed alarm at the terms of the Agreement, telling Zeitels that the document did not accurately reflect the work that DeVona had been doing, Day 2, pp. 128-129, and that he was fearful that he could easily be replaced based on the tasks described in that Agreement. Ex. 7 (letter from DeVona to Zeitels stating that, under the Agreement, Zeitels "could hypothetically give me notice and replace me immediately once all my work is done."). DeVona stated at trial that Zeitels explained that the Agreement "doesn't change [the] underlying relationship. The umbrella partnership is still there and that whenever we make and sell this stuff is going to be – that's when we were going to end

4

it. . . . [W]hen we sell the company." Day 2, p. 129. In June 1999, DeVona signed the Agreement, as originally presented.

From 1999 to Endocraft's closure in 2011, DeVona worked in a variety of capacities developing and selling medical instruments for Endocraft. He was paid even in Endocraft's early, non-profitable years, see Day 2, p. 135, and was paid various amounts (including loans, which were forgiven) by Endocraft over the profitable years. Day 2, p. 138. Overall, he was paid over $800,000 for his work. Day 3, p. 125. DeVona never received, nor demanded, a portion of Endocraft's net profits.

Beginning in the 2010-2011 timeframe, things began to unravel. DeVona developed a product at Zeitels' direction, but Zeitels chose not to include that product in Endocraft's product line. Day 2, pp. 142-145. DeVona began to feel his and Zeitels' agreement was not being honored, and though DeVona felt it may be time to sell Endocraft and DeVona took steps in that direction, he and Zeitels never reached any such agreement. Day 2, p. 146. On October 22, 2011, during a meeting between Zeitels, DeVona, DeVona's wife, and an attorney named Norm Orodenker, Zeitels announced that he was shuttering Endocraft. Day 2, pp. 146-147. DeVona was not paid any portion of Endocraft's value at closing.

III. Discussion

Zeitels argues first that, under Rhode Island's totality-of-circumstances test for determining the existence of a partnership, see R.I. Gen. Laws § 7-12-18; Southex Exhibitions, Inc. v. Rhode Island Builders Ass'n, Inc., 279 F.3d 94, 100-101 (1st Cir. 2002), the trial evidence was insufficient to support a verdict finding a partnership, particularly after DeVona and Endocraft entered into the Agreement. Def. Mem. [#310] 3-8.[5] The court begins and ends with

---

[5] At the close of evidence, Zeitels moved for judgment as a matter of law under Rule 50(a), also arguing that DeVona proffered insufficient evidence to allow a jury to find a partnership. Mot. J.

5

this argument.

> *i.     Analysis – Rule 50*

Motions for judgment as a matter of law under Fed. R. Civ. P. 50 are to be denied unless "the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." See Estate of Berganzo-Colon ex rel. Berganzo v. Ambush, 704 F.3d 33, 38 (1st Cir. 2013) (internal citations and quotations omitted). Review "is weighted towards preservation of the jury verdict." Id. (same).

As to partnership, the court instructed the jury as follows. First, that "Mr. DeVona claims that he and Dr. Zeitels were partners in a business which designed, developed, and sold surgical instruments." Final Jury Instructions [#269] 14. The court further explained that a partnership "is a voluntary association to carry on as co-owners a business for profit, based on an agreement with the parties." Id. The court provided a list of factors the jury was to consider in determining the existence of a partnership, which included among them "whether the parties agreed to share in the profits of the business relationship"; "the parties' control over bank accounts or other assets and, if a joint bank account exists, whether that account is for convenience only or whether the party placing funds in that account intended to make such funds jointly owned"; and "whether the parties shared the management decisions of the business." Id. at 15; see Southex Exhibitions, Inc., 279 F.3d at 100-101.

Leaving all credibility determinations to the jury, the trial evidence, in relation to the factors listed in the instructions and provided by the First Circuit, may be sufficient for a reasonable jury to find that DeVona and Zeitels entered into a partnership at the outset of their business endeavor. The jury had before it admissible and relevant evidence that it was entitled to

---

as a Matter of Law [#263] 13-17. This court therefore will consider the renewed argument under Rule 50(b).

credit consisting of, *inter alia*, Zeitels' statements confirming the existence of a partnership (offered through DeVona and third-party Steven Fusco), a bank account jointly owned by both DeVona and Zeitels, and DeVona's trial testimony that between 1997 and 1999, he and Zeitels worked together developing a surgical instrument and thought themselves ready to sell that instrument in 1999. A jury could thus find that DeVona and Zeitels formed a partnership to create a company or a surgical device and to sell that device or company, or the intellectual property associated therewith, to the highest bidder in the shortest amount of time possible.

But finding that this partnership was formed in 1997 does not on its own support the verdict, which depends on a finding that DeVona and Zeitels agreed to be partners and share profits long after the partnership may have originally been formed. A partnership under Rhode Island law dissolves "by the termination of the definite term or particular undertaking specified in the agreement." See R.I. Gen. Laws § 7-12-42. Here, while the evidence may support finding a partnership formed for an initial undertaking, see Day 2, pp. 32-34, any such partnership dissolved under Rhode Island law once DeVona and Zeitels abandoned that initial undertaking after the meeting with ACT Medical to embark instead on a new tact of actually manufacturing instruments and selling them on a long term basis. Day 3, pp. 49-50 (DeVona: "We had switched gears. We decided to switch gears. We thought we could sell the company early. And when we went to ACT Medical a month earlier, we realized it was a no-go just to have it made and just sell the company.").

The issue therefore is whether there was sufficient evidence from which a reasonable jury could find that a partnership (under which DeVona would be entitled to Endocraft's profits and value upon sale) continued after DeVona and Zeitels decided to "switch gears." See R.I. Gen. Laws § 7-12-34 ("[w]hen a partnership for a fixed term or particular undertaking is continued after the termination of the term or particular undertaking without any express agreement, the

7

rights and duties of the partners remain the same as they were at the termination, insofar as is consistent with a partnership at will."). There is not.

In particular, there is little evidence in the record objectively supporting any of Rhode Island's indicia of partnership from the end of April 1999 going forward: DeVona never shared in (or expressed any entitlement to) the purported partnership's profits or losses; Zeitels reported all of Endocraft's profits on his personal tax returns; and the purported partnership never held itself out in its own name, never filed any IRS Schedule K-1's, and never kept any books. See R.I. Gen. Laws § 7-12-30. Instead, DeVona worked for, and was paid by, Endocraft from 1999 to 2011 without once complaining of not receiving a share of profits, and the entirety of DeVona's statements regarding remuneration during this period were cast in terms of employee (or independent contractor) compensation rather than partnership profits. At trial, when asked whether he ever had "an agreement with anybody to receive 40 percent of net profits from the sale of [Endocraft's products]," DeVona did not answer in the affirmative and instead referred to the Agreement: "Now you're talking about June of 1999 with the Independent Sales Agreement. And at that point, yes. That was the vehicle." Day 3, p. 54. But under Rhode Island law, while the receipt of a share of the profits of a business is *prima facie* evidence that he is a partner in the business, "no such inference is drawn if profits were received in payment . . . [a]s wages of an employee . . . ." R.I. Gen. Laws § 7-12-18.

The documentary evidence marshalled by DeVona also does not support a continuing partnership under Rhode Island law after May 1999. Exhibit 4, a bank document, reflects that DeVona and Zeitels were co-owners of an account in 1998, and Exhibit 47, an invoice for metal fabrication, shows that DeVona was billed for certain work in 1998. Neither helps establish an ongoing partnership from 1999 on, and as to the bank document, joint property alone does not of itself establish a partnership. R.I. Gen. Laws § 7-12-18. Exhibit 25, an April 1999 document

memorializing Endocraft's corporate decision to name DeVona vice-president, shows that Zeitels was the sole owner of Endocraft and, as such, that he elected DeVona to be an officer of Endocraft. It shows nothing as to any partnership. Exhibit 120, an April 1999 credit application to fund Endocraft, does list both Zeitels and DeVona on the lines for owners and credit card holders, but the application also lists the percent ownership for Zeitels as 100% and for DeVona as 0%. Id. Moreover, only Zeitels signed as an authorized officer of the business, and only Zeitels signed a continuing guaranty of payments due. Id. Exhibit 5, a May 1999 thank you letter from Zeitels to a third-party, shows that the two men made a presentation together, but does not refer to the nature of their business relationship.

Exhibit 3, a 2001 letter from DeVona to Zeitels expresses DeVona's fear that there is nothing to protect DeVona should Zeitels pass away, and asks that Zeitels purchase life insurance or include something in his will to protect DeVona. The letter shows DeVona's view that he has made "investments" to do the work he was doing but also acknowledges the absence of any existing legal protections. There is no response in the record from Zeitels.

Exhibit 6, a 2009 form purporting to serve as an instrument whereby DeVona guarantees some portion of Endocraft's credit, identifies Zeitels as the existing owner of Endocraft. And although DeVona has signed the document, there is no corresponding signature by Zeitels agreeing to add DeVona as a new owner.

Exhibit 10, a 2010 e-mail from DeVona to Zeitels, shows that DeVona considered and discussed future plans for Endocraft, including a potential sale, with Zeitels, and Exhibit 17, a 2011 email from DeVona to Zeitels, shows that DeVona made recommendations to Zeitels on the management of Endocraft's income and bills. They do not show that DeVona ultimately shared management of a partnership but rather that he served as a managerial employee of Endocraft.

At bottom then, the sole evidence in support of DeVona's claim of a continuing partnership after May 1999 are his reports on Zeitels' statements in May 1999 that the "umbrella partnership" and "underlying agreement" were unchanged by the Agreement. Day Two, pp. 128-129. This court does not replace the jury's credibility determination with its own, Jordan-Milton Mach., Inc. v. F/V Teresa Marie, II, 978 F.2d 32, 34 (1st Cir. 1992), and accords those statements full weight. But even fully crediting these statements, the evidence of the subsequent conduct of the parties points so strongly and overwhelmingly in favor of Zeitels that no reasonable jury could have found a continuing partnership after May 1999.

The necessary conclusion is that if the partnership existed only through April or May 1999, that date would also mark the accrual for any breaches of the partnership agreement or its attendant fiduciary duties. The ten-year statute of limitations applicable to such claims thus ended in 2009, four years prior to the commencement of the present suit. See R.I. Gen. Laws § 9-1-13 (establishing ten year limitations period).

In accordance with the foregoing, Zeitels' Motion [#285] for judgment as a matter of law is ALLOWED, and the court will enter an amended judgment consistent with this order.

    ii.    *Analysis – Rule 59*

Under Fed. R. Civ. P. 50(c)(1), "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Accordingly, the court considers Zeitels' alternative request for a new trial.

Under Fed. R. Civ. P. 59, "[a] new trial may be granted if the verdict is against the weight of the evidence or if the action is required in order to prevent injustice." Mejias-Aguayo v. Doreste-Rodriguez, 863 F.3d 50, 54 (1st Cir. 2017) (internal citations and quotations omitted). Zeitels proffers two arguments to meet this standard. First, that the verdict finding a partnership

is against the great weight of an ambiguous record containing sparse support for a partnership; and second, that the jury, in finding breaches of the partnership agreement before Endocraft's profitable years, misunderstood the instructions that any breach must be based on failure to share profits. The court conditionally agrees with the first argument.[6]

In assessing the weight of evidence under Rule 59, the "court may, though it is not required to, weigh the evidence and credibility of the testimony." Mejias-Aguayo, 863 F.3d at 54. Further, a new trial may be granted "even where the verdict is supported by substantial evidence." Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994); see 11 Wright & Miller, Fed. Prac. & Proc. § 2806 (3d ed.) (motions for a new trial may be granted even where judgment as a matter of law would be inappropriate).

For substantially the same reasons for granting the above motion under Rule 50(b), the court conditionally finds that a jury verdict finding a partnership after April or May 1999 is sufficiently contrary to the great weight of the trial evidence as to justify a new trial. Accordingly, the court conditionally ALLOWS the motion.

IT IS SO ORDERED.

September 6, 2017                                             /s/ Indira Talwani
                                                                                United States District Judge

---

[6] The court disagrees with the second. Although perhaps some inconsistency attends the jury's finding a breach of the partnership agreement before Endocraft's profitable years, the jury's damages award on this count is consistent with the jury instructions.